UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTHONY HERNANDEZ,

      Plaintiff,

v.                                 Case No: 5:24-cv-137-JSM-PRL

YOSVANY RODRIGUEZ, UNITED
PARCEL SERVICE, INC., COYOTE
LOGISTICS, LLC and BIH EXPRESS,
INC.,

      Defendants.

_____

## ORDER

This is a personal injury case arising from a motor vehicle accident on October 16, 2021. Before the Court are Plaintiff Anthony Hernandez's motions to compel the production of documents and interrogatory responses from Defendants United Parcel Service, Inc., an Ohio corporation ("UPS Ohio"), and Coyote Logistics, LLC ("Coyote Logistics"). (Docs. 27-30). Defendants UPS Ohio and Coyote Logistics have responded and argue that based on their involvement in the accident and their production to date, their responses are complete and that further information would be irrelevant. (Docs. 37-40). The Court agrees. As such, as set forth below and for the additional reasons discussed at the hearing, Plaintiff's motions to compel are due to be denied.

Plaintiff alleges that he sustained injuries after his vehicle collided with a tractor-trailer operated by Defendant Yosvany Rodriguez ("Rodriguez"), who was hauling a load for Macy's Corporate Services, LLC, contracted by UPS Ohio. (Doc. 1-1). Plaintiff further alleges that UPS Ohio was the motor carrier responsible for the shipment of the load and utilized

Coyote Logistics to broker the subject load to a second motor carrier in Defendant BIH Express, Inc. ("BIH"). (*Id.*)

UPS Ohio has disputed its involvement in the accident from the outset. Coyote Logistics has disputed its degree of involvement from the outset as well. Both defendants have identified UPS Supply Chain Solutions, Inc. ("UPS-SCS") as the broker of the subject load to Defendant BIH and asserted that Coyote Logistics permitted UPS-SCS to use its proprietary Bazooka software platform for logistics tracking.

Plaintiff has not heeded defendants' assertions. Instead, during discovery, Plaintiff served requests for production and interrogatories on UPS Ohio and Coyote Logistics. (Docs. 27-2, 28-2, 29-2, 30-2). After an agreed upon extension, UPS Ohio and Coyote Logistics served Plaintiff its responses, which included a preliminary statement, stating (again) that they were not proper parties to the action because they "did not transport, agree to transport, and/or arrange transportation for, the subject load that [Defendant] Rodriguez was hauling for [Defendant] BIH at the time of the accident," but UPS-SCS, a registered broker and separate entity in the UPS family of companies, brokered the subject load. (*Id.*). In its responses, UPS Ohio and Coyote Logistics therefore objected to specific requests relating to their involvement as a motor carrier or broker of the subject load on the basis that such requests were irrelevant since they were not the motor carrier or broker responsible for the transaction of the subject load at the time of the accident. Having found their responses to be generally incomplete and unresponsive and after failed attempts to obtain a privilege log and confidentiality agreement, Plaintiff then moved to compel production of documents and information from UPS Ohio and Coyote Logistics. (Docs. 27-30).

Shortly after the instant motions to compel were filed, the parties executed a

confidentiality agreement, which the Court granted. (Docs. 33-34). UPS Ohio and Coyote Logistics subsequently produced various non-privileged [1] documents and information responsive to numerous requests. The Court then held a hearing on September 19, 2024, to consider the remaining disputes in the motions to compel.[2] (Doc. 48).

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Under Rule 26(b)(1), parties are entitled to discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). Relevancy is based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Garcia v. Padilla*, No. 2:15-cv-735, 2016 WL 881143, at *2 (M.D. Fla. Mar. 8, 2016) (quoting Fed. R. Evid. 401). If the movant meets that burden, it then shifts to the opposing party that objected to the requested discovery to show that the requests are improper, unreasonable, disproportionate to the needs of the case, or unduly burdensome. *See Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559-60 (11th Cir. 1985). Motions to compel must be denied if the movant fails to meet their initial burden. *See Douglas*, 2016 WL 1637277 at *2-4.

---

[1] UPS Ohio and Coyote Logistics did not find any privileged documents and therefore no privilege log was required to be produced.

[2] These include Request for Production Nos. 1-7, 9-10, 17, 58-59, and 68 served on UPS Ohio, Request for Production Nos. 12, 17, 38, and 64-65 served on Coyote Logistics, and Interrogatory Nos. 1-2, 4, 12-13, and 15 served on UPS Ohio and Coyote Logistics.

Given a review of the record and representations made by the defendants' counsel at the hearing, there can be no dispute that UPS Ohio and Coyote Logistics produced all documents and information they have in their possession, custody, and control relevant to their respective roles and involvement in the accident. UPS Ohio and Coyote Logistics have made clear that certain documents and information sought relating to the subject load is irrelevant because they were not involved in the accident as a motor carrier or broker of the subject load and, as a result, they are unable to produce documents or information to such requests. These claims are supported by their counsel's statements made at the hearing and evidence provided in their responses, which include sworn affidavits from corporate executives, traffic crash reports, delivery orders, and contracts (including the Master Transportation Services Agreement) pertaining to the subject load at issue.

The evidence clearly demonstrates that UPS Ohio and Coyote Logistics were not the motor carrier or broker responsible for the transaction at the time of the accident, but rather UPS-SCS was the party that brokered the subject load. For example, the sworn affidavits from Ryan Cook (Vice President, Risk Management & Compliance of Coyote Logistics, LLC) and Bonnie Michael (Vice President of Transportation for UPS Worldwide Forwarding, Inc.) state that UPS-SCS brokered the subject load to BIH who, in turn, transported the subject load under its own motor carrier operating authority. The Florida Traffic Crash Report No. 88566223 dated October 16, 2021 indicates that there was a collision between Plaintiff's vehicle and a tractor-trailer owned by BIH that Rodriguez was driving under BIH's motor carrier operating authority. The UPS Delivery Order No. 24780474 dated October 15, 2021 shows that UPS-SCS prepared and brokered the subject load to BIH as a carrier and identifies

Coyote Logistics as a vendor (not as a broker) to UPS-SCS.[3]

At the hearing, Plaintiff's counsel argued that UPS-SCS may not be a proper party to this action because they are not explicitly mentioned in the Master Transportation Services Agreement ("MTSA"). Although the MTSA does not state "UPS-SCS" or "UPS Supply Chain, Solutions, Inc." as the registered broker of the subject load, the agreement does state that "UPS or its subsidiaries or *affiliates*" may "manage the transportation of ground freight under contractual arrangements with various shippers." UPS Ohio and Coyote Logistics' counsel stated at the hearing that the MTSA lists UPS' address as 12380 Morris Road, Alpharetta, Georgia 30005, which matches UPS-SCS' address listed in the UPS Delivery Order, supporting its repeated assertions that UPS-SCS brokered the subject load. (Doc. 44) (emphasis added).

Plaintiff nevertheless argues that UPS Ohio and Coyote Logistics should produce certain documents they have in their possession, custody, and control (e.g., a mission statement and organizational chart) responsive to his requests because the requests are relevant, and in their responses, they did not explicitly state that they do not have such documents. Even if UPS Ohio or Coyote Logistics did have a mission statement or organizational chart in their possession, custody, or control, such documents are irrelevant because, as discussed above, UPS Ohio and Coyote Logistics were not involved in the

---

[3] The Court notes that UPS Delivery Order lists the acronym "UPSDS" twice—once as the carrier and another as the shipper. The Court is informed by Ms. Michael's affidavit and representations made by UPS Ohio and Coyote Logistics' counsel at the hearing that "UPSDS" means "UPS DirectShip," which is a contract program under the UPS Incentive Program Agreement that permits the use of a broker to arrange with registered motor carriers for the transportation delivery of Macy's loads. With that understanding in mind, the UPS Delivery Order indeed confirms that the subject Macy's load was shipped directly from origin to destination, listing UPS-SCS as the broker and BIH as the third-party motor carrier.

accident as a motor carrier or broker of the subject load. To the extent that the organizational chart would be relevant to the Plaintiff for purposes of moving to amend the complaint, Ms. Michael's affidavit explains United Parcel Service of America, Inc.'s corporate structure and some of the companies it owns, including UPS Ohio, UPS-SCS, and Coyote Logistics.

Next, by way of example, Plaintiff moved to compel UPS Ohio and Coyote Logistics to provide complete responses to Interrogatory No. 1, which seeks information of individuals who took part in answering the interrogatories. UPS Ohio and Coyote Logistics responded to the interrogatory, stating that its responses were prepared with the assistance of counsel based on information gathered by authorized employees and/or counsel. They further indicated that its responses are corporate responses and therefore are not within the personal knowledge of any particular person. Plaintiff argues that those responses are not responsive to the request and precludes him from learning individual's identities so that he can depose them by name. The Court finds UPS Ohio and Coyote Logistics' responses to this interrogatory to be adequate as Plaintiff cannot circumvent UPS Ohio and Coyote Logistics' right to designate witnesses to respond to specific topics. *See Thomas v. Mitsubishi Motors Corp.*, No. 2:12-CV-1215-DB-PMW, 2014 WL 280495, at *5 (D. Utah Jan. 24, 2014).

Finally, Plaintiff takes issue with UPS Ohio and Coyote Logistics' responses of "none" or "not applicable" to Requests for Production Nos. 17, 64-65, and 68 because it contradicts their Uniform Case Management, in which they indicated that "Coyote permitted UPS-SCS to use Coyote's proprietary Bazooka software platform for logistics tracking." UPS Ohio and Coyote Logistics contend that their responses to those requests are accurate and complete, without raising any objection. Indeed, UPS Ohio and Coyote Logistics have even offered to cooperate in adding UPS-SCS as a party to the action if Plaintiff believed he had grounds to

state a claim against them. However, Plaintiff has yet to do so.

Despite their assertions, now supported by affidavits, that UPS-SCS is the proper party and that their involvement is minimal, if at all (USP Ohio says it had no involvement, while Coyote's consists of allowing the use of certain software), the defendants have produced documents and provided responses to Plaintiff's discovery. To the extent they did not, their objections are well taken and sustained.

Accordingly, Plaintiff's motions to compel (Docs. 27-30) are **DENIED**.

**DONE** and **ORDERED** in Ocala, Florida on September 23, 2024.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties